1  Angela Swan, SBN 213793
2  Adam Trotter, SBN 335726
   THE LAW OFFICES OF ANGELA SWAN, PC
3  21151 South Western Avenue, Suite 177
   Torrance, CA  90501
4  Office Telephone:  (310) 755-2515
   Facsimile:         (310) 878-0349
5  Email:        aswan@angelaswanlaw.com
6  Attorney for Plaintiff LARRY GRANT   AND P.C.

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                   **WESTERN DIVISION**

11                                    )
                                      )
12                                    )   Case No:
                                      )   Judge: Honorable
13 LARRY GRANT; on his own behalf     )   Courtroom:
                                      )
14 and on behalf of his minor child, P.C., )
                                      )
15 Individuals,                       )
                                      )   **VERIFIED COMPLAINT**
16                                    )   **VIOLATION OF CIVIL RIGHTS**
                                      )   **42 U.S.C. § 1983, ASSAULT,**
17                Plaintiffs,          )   **TRESPASS, FALSE**
                                      )   **IMPRISONMENT, INVASION OF**
18     v.                             )   **PRIVACY, INTENTIONAL**
                                      )   **INFLICTION OF EMOTIONAL**
19                                    )   **DISTRESS, NEGLIGENT**
   CITY OF LONG BEACH;                )   **INFLICTION OF EMOTIONAL**
20 LONG BEACH POLICE                  )   **DISTRESS**
   DEPARTMENT;                        )
21 POLICE OFFICER RODRIGUEZ;          )
   Does 1 through 15 Inclusive,       )
22                                    )
                     Defendants.      )   **DEMAND FOR JURY TRIAL**
23                                    )
24                                    )
25

26  _____

27
                    **COMPLAINT FOR DAMAGES**
28                           1

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1343(c) (Civil Rights).

2.  The State law claims for relief are within the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. §1367.

3.  Plaintiff's claims herein arise out of an incident involving the City of Long Beach Police Officers, in the City of Long Beach, County of Los Angeles, State of California and within this Judicial District; as such, venue is proper in this District.

4.  Government Claims Act (Gov. Code §§ 800 / 900 et. seq.).  Per this requirement and as delineated in the statutes (also sometimes referred to as the "California Torts Claims Act"), Plaintiffs Grant and P.C. timely presented his government claim to the Defendants in accordance with the statutes – a condition precedent to the maintenance of any cause of action against a public entity. Plaintiffs presented a timely governmental tort claim with Defendant City of Long Beach on January 27, 2021.  Defendant City of Long Beach subsequently rejected Plaintiffs' claim on February 17, 2021.  Plaintiff's claim to Defendants has now blossomed into the instant matter before the Court.

5.  Larry Grant and P.C. filed a claim with the Office of the City Attorney in accordance with Government Code §945.6 (Exhibit 1).

**COMPLAINT FOR DAMAGES**

2

## **THE PARTIES**

6.  Plaintiff LARRY GRANT ("Grant"), a natural person of mature age, is a private individual within the meaning of California law and is a citizen of the State of California, and at all times relevant hereto a resident of the County of Los Angeles, State of California.

7.  Plaintiff P.C., ("Plaintiff", "P.C.", "Plaintiff P.C.") a natural person of childhood age, is a private individual within the meaning of California law and is a citizen of the State of Georgia or California, depending upon with which parent she is residing.  Per CACD Local Rule 17-1.1, Plaintiff P.C. is represented by Counsel with the consent and participation of her father, Plaintiff Grant, in this matter as well.

8.  Plaintiffs Grant resides in the City of Long Beach.

9.  Plaintiff Grant is the father of Plaintiff P.C.

10. Plaintiffs Grant and P.C. are African Americans, with Grant residing in the City of Long Beach.

11. Defendant CITY OF LONG BEACH ("City", "Long Beach") is the government entity which controls and operates the City of Long Beach, California.

12. Defendant LONG BEACH POLICE DEPARTMENT ("Police") is the entity which is primarily responsible for policing the City of Long Beach, California, as well as enforcing its laws.

13. Defendant Officer RODRIQUEZ ("Officer") was at all times relevant to this matter a Long Beach Police Officer, wearing a Long Beach Police Department Uniform, with Badge No. 11098.

14. Defendant Officer RODRIQUEZ is being sued in his professional and

---

**COMPLAINT FOR DAMAGES**

3

individual capacity. At all times relevant to this action, Defendant Officer acted under color of law.

15.Plaintiffs are informed and believe, and on that basis allege, that during the times mentioned herein, Defendants collectively, and each of them are the agents, employees, partners, joint venturers, representatives, coconspirators, and assigns of their co-defendants and were, as such, acting within the scope, course, and authority of such agency, employment, partnership, joint venture, representation, conspiracy, and/or assignment, unless the context states otherwise.

## **STATEMENT OF FACTS**

16. Plaintiff Grant (Grant) is the father of Plaintiff P.C.

17. On or about September 2, 2020, Plaintiff Grant received a frantic phone call from P.C.'s mother, Michellei Cephus, (Cephus) stated that she was being abused by a boyfriend and that she was living in an area that was not habitable for P.C. Grant did not hesitate to purchase a plane ticket from California to Georgia in order to remove his daughter from a negative situation. .

18.On or about September 3, 2020, Plaintiff Grant returned to California with his daughter. P.C was ecstatic to spend quality time with Grant as well has her paternal extended family. .

1.   While in California, P.C and Cephus remained in close contact via phone. Grant maintained phone communication, as well, with Cephus. Throughout this ordeal, Plaintiffs were in fear of being physically assaulted and/or harmed.

2.   Plaintiffs Grant and P.C. claim that Defendants City, Police, and Officer's trespassed on their property wherein the Plaintiffs had a right to be present.

**COMPLAINT FOR DAMAGES**

4

3.  Plaintiffs Grant and P.C. claim that they were each wrongfully restrained/confined/detained by Defendants City, Police, and Officer.

4.  Plaintiffs Grant and P.C. claim that Defendants City, Police, and Officer violated their right to privacy. T

5.  Since the happenings of the aforementioned facts, on or about July 9, 2021, a Los Angeles County Superior Court has officially ordered parenting time to be afforded to the Plaintiff Grant to be spent with Plaintiff P.C.. (See Case No. 20LBPT00214, Dept.S15.)

6.  No adequate reason was given to Plaintiff Grant as to why he must surrender his daughter to the Defendant Police Department – which would allow for the Defendant Police to subsequently deliver Plaintiff P.C. to her mother.

7.  Grant and Cephus maintained frequent contact regarding the best interest of their daughter.

8.  On or about September 19, 2020,  Cephus became upset with Grant because Grant was speaking with his fiancé in the background when Cephus called on the phone.  Cephus informed Grant that she felt that Grant was being disrespectful and that she angrily exclaimed that she was" coming to get her child."

9.  Grant knew that Cephus was not stable and that it would be in his daughter's best interest to remain in his primary physical custody. As such, Mr. Grant retained the law offices of Angela Swan to file an ex parte hearing on Monday September in order to obtain custody of his daughter.

10. On September 19, 2020 Grant and P.C. were detained in their vehicle by the LBPD.  The police pulled P.C. out of the vehicle and stated that they needed to conduct a welfare check on P.C.

**COMPLAINT FOR DAMAGES**

**5**

11. P.C. was found to be well in the care of her father.  The LBPD asked P.C if she wanted to speak with her mother and P.C. said that she did not.

12.  At approximately 12:50am, later that morning, several officers showed up at Grant's home and demanded that P.C. come with them.

13. P.C. was terrified.  She stated to Grant, "Daddy what did I do wrong?"

14. Grant was terrified and distraught that his child, who was scantily dressed had to be awaken from her sleep and dragged out of her home by several officers.

15. Grant had pleaded with the officers to allow his daughter to stay with him.

16. Officers taunted Grant and said well if you don't have a birth certificate with your name on it there is nothing that you can do.

17. Grant felt an overwhelming feeling of grief and despair. He tried to calm his daughter down and told her that she would be okay.

18.  LBPD turned Grant's child over to Cephus despite the child and Grant's pleas.

19.  No adequate reason was given to Plaintiff Grant as to why he must surrender his daughter to the Defendant Police Department – which would allow for the Defendant Police to subsequently deliver Plaintiff P.C. to her mother.

20. Throughout this ordeal, Plaintiffs' were in fear of being physically assaulted and/or harmed.

21. Plaintiffs Grant and P.C. claim that Defendants City, Police, and Officer's trespassed on their property wherein the Plaintiffs had a right to be present.

22. Plaintiffs Grant and P.C. claim that they were each wrongfully restrained/confined/detained by Defendants City, Police, and Officer.

23. Plaintiffs Grant and P.C. claim that Defendants City, Police, and Officer violated their right to privacy.

**COMPLAINT FOR DAMAGES**

6

24. Since the happenings of the aforementioned facts, on or about July 9, 2021, a Los Angeles County Superior Court has officially ordered parenting time to be afforded to the Plaintiff Grant to be spent with Plaintiff P.C.. (See Case No. 20LBPT00214, Dept.S15.)

25. Cephus has since absconded with P.C. and the District Attorney's Office been ordered to locate P.C. and return P.C to the custody of Grant.

## COUNT I
## CIVIL RIGHTS
## VIOLATION OF FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS:
## ILLEGAL SEIZURE AND VIOLATION OF DUE PROCESS RIGHTS
## 42 U.S.C. § 1983
### (by All Plaintiffs Against All Defendants)

26. Plaintiffs incorporate by reference each and every allegation contained in the above paragraphs.

27. This action is being filed pursuant to 42 U.S.C.§1983 for violation of rights under the Fourth (Unreasonable Seizure), Fifth (Due Process), and Fourteenth Amendments to redress injuries suffered by the Plaintiffs, when the Defendants' unreasonably seized Plaintiff P.C. and removed her from the home of her father, Plaintiff Grant – whereby the Defendants concurrently violated the rights of Plaintiff Grant as well.

28. A parent's right to care, custody, and management of a child is a fundamental liberty interest protected by the Federal Constitution that must not be disturbed except in extreme cases where a parent acts in a manner incompatible with parenthood.

**COMPLAINT FOR DAMAGES**

7

29. Juvenile protective custody should not be made an instrument for denying to a minor a Constitutional Right or a guarantee afforded by Law to an adult.

30. A parent's interest in the companionship, care, custody and management of his children is a compelling one, ranked among the most basic of civil rights, and state must provide parent with a hearing and an opportunity to be heard before it can deprive parent of that interest.

31. Plaintiff Grant had a Constitutional Right to be free from seizure of his child pursuant to the Fourth and Fourteenth Amendments of the United States Constitution guaranteed by 42 U.S.C.§1983 – as did Plaintiff P.C. have a right not to be seized as well.

32. The Defendants, while acting under the color of State law and without any Due Process being afforded to the Plaintiffs, deprived Plaintiffs Grant and P.C. of their rights, privileges, and immunities secured by the United States Constitution and the California Constitution.

33. Defendant(s) were clothed in Long Beach Police Department uniform(s) during the course of his duties and acting as a Police Officer, or under the authority of his title as a Long Beach Police officer, under the color of State law, during all times relevant to this action.

34. The Plaintiffs further allege that the Defendants actions were a result of the typical custom and policy of the City of Long Beach – having a policy or custom of depriving parents of custody of their children without a warrant or due process and absent exigent circumstances; moreover, the Defendant City of Long Beach being the 'moving force' behind the injuries suffered by Plaintiffs Grant and P.C. in this matter.

**COMPLAINT FOR DAMAGES**

**8**

35. The Plaintiffs also allege that Defendant Officer Rodriguez was the final decision maker in this matter to remove Plaintiff Grant's child from his home – as Defendant Officer Rodriguez was in command of the Defendant Long Beach Police throughout this episode on-site at the Plaintiffs' residence in the City of Long Beach.

36. The California Second Appellate District has previously held and opined that a court could not remove children from home absent showing there were no reasonable means by which the children could be protected without removal. While that court further opined: "Court of Appeal applies the substantial evidence standard of review, keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence. Cal. Welf. & Inst. Code § 300."[1]

37. Courts have unequivocally held that parental rights cannot be terminated on less than clear and convincing evidence.  Because, the fundamental liberty interest of the natural parents in the care, custody, and management of their child does not evaporate simply because they may not have always been model parents.

38. A finding of parental abuse, furthermore, is not sufficient by itself to justify removing the child from the home.

39. With the instant matter, Defendants violated the rights of the Plaintiffs under the Fourth, Fifth, and Fourteenth Amendments when the Defendants, without a warrant, removed the Plaintiff child from her Plaintiff father's home based solely on her mother's belief as well as the Defendant Officer's practice; however, there was no showing to support the establishment of an exception to the

---

[1] See: In re Ashly F., 225 Cal. App. 4th 803, at 809, 170 Cal. Rptr. 3d 523, at 527 (2014).

**COMPLAINT FOR DAMAGES**

9

constitutional rule generally requiring prior judicial authorization to remove a child from the custody of its parent.

40. Plaintiffs Grant and P.C. have suffered severe and lasting physical and emotional injury as a result of the Defendant's actions.

41. Any law or legal code in the State of California – such as Welfare and Institutions Code ("WIC") Section 305 et. seq. – which would appear to give the Defendants any authority to make ad-hoc and on-the-spot parental custody determinations and/or child extractions from the parental home are *Void for Vagueness* and an example of *Unfettered Discretion* – in addition to the *Lack Of Due Process* afforded to the Plaintiffs by *Trampling On The Fundamental Rights Of The Parent/Plaintiffs Involved In This Matter*.[2]

42. Neither does this matter appear as an act of discretion by the Defendants – due to the invalid California law WIC section 305 et. seq.; nor does the matter

---

[2] For instance, please see the seminal case of *Papachristou,* and/or its progeny:

> "This ordinance is void for vagueness, both in the sense that it 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, and because it encourages arbitrary and erratic arrests and convictions. *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; *Herndon v. Lowry,* 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066."

*Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S. Ct. 839, 843, 31 L. Ed. 2d 110 (1972). Furthermore,

> "Living under a rule of law entails various suppositions, one of which is that '(all persons) are entitled to be informed as to what the State commands or forbids.' *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888."

*Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S. Ct. 839, 843, 31 L. Ed. 2d 110 (1972).)

**COMPLAINT FOR DAMAGES**

10

appear as objectively reasonable – as any government official would know better than to forcibly and unjustly remove a child from its parental home under the guise of color of law, while on-the-spot in an ad-hoc manner, or otherwise.[3]

## COUNT II
## ASSAULT
### (by All Plaintiffs Against all Defendants)

43.      Plaintiffs incorporate by reference each and every allegation contained in all the paragraphs above.

44.      A civil action for assault is based upon an invasion of the right of a person to live without being put in fear of personal harm.

45.      In order to establish a case of civil assault and battery, all that is necessary is that the evidence show that plaintiff's injury was caused by defendant's violence, or that defendant acted with wanton, willful or reckless disregard of plaintiff's rights.

46.      That Defendants City, Police, and Officer acted, intending to cause harmful or offensive contact,

47.      That Plaintiffs Grant and P.C. reasonably believed that they were about to be touched in a harmful or an offensive manner.

48.      That it reasonably appeared to Plaintiffs Grant and P.C. that Defendants City, Police, and Officer were about to carry out the threat.

49.      That Plaintiffs Grant and P.C. did not consent to Defendants City, Police, and Officer's conduct

---

[3] A sentiment also echoed by the California Appellate Court for the Second District: " Court cannot encourage, under the guise of "best interests" or "home stability," the arbitrary determination by a governmental agent that a well-educated "professional" couple will be better parents than "red-necked hillbillies" who are on welfare and have six other children."  *Matter of Cheryl E,.* (App. 2 Dist. 1984) 207 Cal.Rptr. 728, 161 Cal.App.3d 587

## COMPLAINT FOR DAMAGES
11

50.      That Plaintiffs Grant and P.C. were harmed.

51.      That Defendants City, Police, and Officer's conduct was a substantial factor in causing Plaintiffs Grant and P.C.'s harm.

## COUNT III

## TRESPASS

### (by All Plaintiffs Against all Defendants)

52.      Plaintiffs incorporate by reference each and every allegation contained in all the paragraphs above.

53.      Plaintiffs Grant and P.C occupied/controlled the property;

54.      That Defendants City, Police, and Officer intentionally, recklessly, or negligently entered Plaintiffs Grant and P.C.'s property.

55.      That Plaintiffs Grant and P.C. did not give permission for the entry or that Defendants City, Police, and Officer exceeded Plaintiffs Grant and P.C.'s permission.

56.      That Plaintiffs Grant and P.C. were harmed.

57.      That Defendants City, Police, and Officer's entry/conduct was a substantial factor in causing Plaintiffs Grant and P.C.'s harm.

**COMPLAINT FOR DAMAGES**

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT IV**

**FALSE IMPRISONMENT**

**(by All Plaintiffs Against all Defendants)**

58.     Plaintiffs incorporate by reference each and every allegation contained in all the paragraphs above.

59.     That Defendants City, Police, and Officer intentionally deprived Plaintiffs Grant and P.C. of their freedom of movement by use of physical barriers/force/threats of force/menace/fraud/deceit/unreasonable duress.

60.     That the restraint/confinement/detention compelled Plaintiffs Grant and P.C. to stay or go somewhere for some appreciable time, regardless of duration.

61.     That Plaintiffs Grant and P.C. did not knowingly or voluntarily consent.

62.     That Plaintiffs Grant and P.C. were actually harmed.

63.     That Defendants City, Police, and Officer's conduct was a substantial factor in causing Plaintiffs Grant and P.C.'s harm.

**COMPLAINT FOR DAMAGES**

**13**

# COUNT V

## INVASION OF PRIVACY / INTRUSION INTO PRIVATE AFFAIRS

### (by All Plaintiffs Against all Defendants)

64.     Plaintiffs incorporate by reference each and every allegation contained in all the paragraphs above.

65.     That Plaintiffs Grant and P.C. had a reasonable expectation of privacy in Plaintiff Grant's living quarters.

66.     That Defendants City, Police, and Officer intentionally intruded in Plaintiff Grant's living quarters.

67.     That Defendants City, Police, and Officer's intrusion would be highly offensive to a reasonable person;

68.     That Plaintiffs Grant and P.C. were harmed.

69.     That Defendants City, Police, and Officer's conduct was a substantial factor in causing Plaintiffs Grant and P.C.'s harm.

70.     Plaintiffs Grant and P.C. had a reasonable expectation of privacy in Plaintiff Grant's living quarters, consider the following:

(a) The identity of Defendants: City, Police, and Officer;

(b) No other uninvited persons typically had access to Plaintiff Grant's living quarters yet many others/neighbors and could see or hear Plaintiffs Grant and P.C.'s interactions with the Defendants.

(c) The means by which the intrusion occurred were quite invasive in that the Defendants forcibly removed the Plaintiff P.C. from her father's living quarters – i.e.: the living quarters of Plaintiff Grant.

71.     The intrusion by the Defendants would be highly offensive to a reasonable, given:

---

**COMPLAINT FOR DAMAGES**

**14**

(a) The extent of the intrusion;

(b) Defendants City, Police, and Officer's motives and goals to separate the Plaintiffs; and

(c) That the intrusion occurred the living quarters of Plaintiff Grant.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (by All Plaintiffs Against all Defendants)

72.      Plaintiffs incorporate by reference each and every allegation contained in all the paragraphs above.

73.      Infliction of Emotional Distress must plead facts demonstrating (1) extreme and outrageous conduct by the Defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) Plaintiffs suffered severe or extreme emotional distress and (3) Plaintiff's injuries were actually and proximately caused by the Defendants' outrageous conduct.

74.      Defendants engaged in conduct described herein, with the intention of – or reckless disregard of – the probability of causing severe or extreme emotional distress to Plaintiffs.

75.      The conduct of Defendants was outrageous and goes beyond all bounds of human decency.  Again, Defendants' outrageous conduct was the actual and proximate cause of the emotional distress discussed herein.

76.      As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer severe and extreme emotional distress of such

**COMPLAINT FOR DAMAGES**

**15**

substantial quantity or enduring quality that no reasonable person in a civilized society should be expected to endure.  Plaintiffs allege that such severe emotional distress has included without limitations: embarrassment, anger, chagrin, disappointment, shame, worry, nausea and other forms of mental and emotional anguish.

77.     As a direct and proximate result of the aforementioned conduct of Defendant, Plaintiffs have suffered economic, psychological, and emotional damages, and Plaintiffs were obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiffs pursuant to *Brandt v. Superior Court*, (1985) 37 Cal.3d 813.

78.     Defendants' conduct intentionally and/or recklessly caused extreme emotional distress to the Plaintiffs and has been intentional, reckless, malicious and oppressive, thereby entitling Plaintiff to recover punitive damages.  (See: *infra.* and below.)

## COUNT VII
## NEGLIGENCE
### (by All Plaintiffs Against all Defendants)

79.     Plaintiffs incorporate by reference each and every allegation contained in all the paragraphs above.

80.     The elements of actionable negligence, in addition to a duty to use due care, include a breach of such duty, and the breach as the proximate cause of

the resulting injury." Musgrove v. Ambrose Properties, 87 Cal. App. 3d 44, 53 (2nd Dist. 1978) (citing United States Liab. Ins. Co. v. Haidinger-Hayes, 1 Cal. 3d 586, 594 (1970)).

81.   Duty. A duty arises when the law recognizes a relationship between the defendant and the plaintiff requiring the defendant to act in a certain manner, often with a standard of care, toward the plaintiff. In this case, Plaintiffs were citizens in their home/living quarters, which required the Defendants to act in a certain manner, namely use reasonable care (at a minimum) to prevent Plaintiff from being injured by an illegal search or seizure.

82.   Breach of Duty. Defendant's employee failed to exercise reasonable care in fulfilling the foregoing duty. Specifically, Defendants any Civil Rights Policies, which were developed and implemented to protect citizens against unreasonable treatment, for example, having one's child forcibly removed from one's home.

83.   Causation. Plaintiff was substantially harmed by Defendant's conduct as presented supra. Plaintiff was subjected to discriminatory treatment initiated by Defendant's, which ultimately caused Plaintiff's brain injury and emotional distress.

84.   Damages. Due to Defendants' breach of duty, Plaintiffs suffered and continue to suffer personal injury and psychological, emotional, and economic damages.

85.   As a proximate result of the negligence, carelessness, recklessness and unlawfulness of Defendants, Plaintiff sustained physical injury to her health, strength, and activity, sustaining injury to her body and shock and injury to her nervous system and person, all of which said injuries have caused and continue to

**COMPLAINT FOR DAMAGES**

17

cause Plaintiff great mental, physical and emotional distress and pain and suffering – i.e.: parasitic and hedonic injuries.  Plaintiff is informed and believes and thereon alleges, that said injuries will result in some permanent disability to Plaintiff, all in addition to her general damages in an amount in excess of the jurisdictional minimum of this court to be proven at trial.

86.     As a further proximate result of Defendants said negligence, omissions, and conduct, Plaintiff has suffered and will continue to suffer economic, physical, hedonic, and general damages in an amount to be proven at trial.

87.     Plaintiffs were forced to retain legal counsel and expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial for recovery by Plaintiff.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

88.     Plaintiffs incorporate by reference each and every allegation contained in all the paragraphs above.

89.     Defendants, and each of them, owed a duty of care to Plaintiffs. They breached this duty based on the acts and conduct outlined herein and engaged in conduct that was negligent, careless, reckless, and unlawful so as to proximately cause the incident, altercation, and thereby proximately and directly caused the hereinafter described injuries and damages to Plaintiff (direct, hedonic, and parasitic damages).

**COMPLAINT FOR DAMAGES**

**18**

90.     Defendants negligently hired, trained, maintained, and employed negligent, incompetent, unfit, careless and reckless staff with insufficient experience.

91.     Said conduct was outrageous and negligently caused severe emotional distress to Plaintiff, and with reckless disregard to the probability that Plaintiff would suffer emotional distress.

92.     As a proximate result of the negligence, carelessness, recklessness and unlawfulness of Defendants, Plaintiffs sustained severe emotional distress as well as physical injury to her health, strength, and activity, sustaining injury to her body and shock and injury to her nervous system and person, all of which said injuries have caused and continue to cause Plaintiffs great mental, physical and emotional distress and pain and suffering and loss of enjoyment of life – i.e.: parasitic and hedonic damages.

93.     Plaintiffs are informed and believe and thereon alleges, that said injuries will result in some permanent disability to Plaintiff, all in addition to her general damages in an amount to be proven at trial.

94.     As a further proximate result of Defendants said negligence, omissions, and conduct, Plaintiff has suffered and will continue to suffer economic, parasitic, hedonic, and general damages in an amount to be proven at trial.

**COMPLAINT FOR DAMAGES**

**19**

# COUNT VIII

## PUNITIVE DAMAGES

### (by all Plaintiffs Against all Defendants)

95.     Plaintiffs incorporate by reference each and every allegation in all paragraphs above.

96.     As a consequence of all the Defendants' wrongful conduct, Plaintiff Grant and Plaintiff P.C. experienced unnecessary pain and suffering and severe and unjustified mental and emotional distress, and for which the Plaintiffs are entitled to recover actual damages.

97.     Plaintiffs' damages are a result of intentional, malicious, reckless, oppressive, and/or fraudulent actions directly perpetrated by the Defendants and/or actions imputed to the Defendants through their lack of background investigation or lack of knowledge of the situational context in this matter.

98.     Defendants acted in bad-faith, or objectively unreasonably, when Plaintiff P.C. was ripped from the home of her father, Plaintiff Grant.

99.     The Defendants, were acting under the color of state law, when Plaintiffs invaded and denied the Plaintiffs of their rights, privileges, and immunities secured by the United States Constitution – as All Defendants were wearing Long Beach Police Department uniforms and acting as law-enforcement officials during the course of their oppressive actions as Long Beach Police Department Officers, during all times relevant to this action.

**COMPLAINT FOR DAMAGES**

20

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, will ask for the following for each Cause of Action to be awarded:

### ALL CAUSES OF ACTION:

1. For Compensatory Damages in the amount of $500,000.00;
2. For General Damages in the amount of $300,000.00;
3. For Punitive Damages in the amount of $2,000,000.00;
4. For Attorney's Fees and Costs of this action; and
5. Such further or additional relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

DATED:  August 17, 2021                THE LAW OFFICES OF ANGELA SWAN, APC

By: _____
Angela Swan,
Attorney for Plaintiff

**COMPLAINT FOR DAMAGES**

21

## **VERIFICATION**

I am the Plaintiff in this action.  I have read the foregoing Verified First Amended Civil Complaint for Damages, and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July , 2021 at Torrance, California.


LARRY GRANT, Plaintiff

**COMPLAINT FOR DAMAGES**

22